UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FLOYD ROSE,

                         Plaintiff,

-v-

ROBERT A. SOLOWAY and
ROTHMAN, SCHNEIDER, SOLOWAY
& STERN LLP,

                         Defendants.

16-CV-7180 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

Plaintiff Floyd Rose, who is presently incarcerated at the United States Penitentiary in Hazelton, West Virginia, has filed this *pro se* malpractice and constitutional-tort suit against his former criminal defense attorney, Robert Soloway—as well as Soloway's law firm, Rothman, Schneider, Soloway & Stern LLP (together with Soloway, "Defendants")—alleging that the representation Soloway provided in connection with the criminal charges that led to Rose's current detention fell below professional standards. (Dkt. No. 1.) Both Rose and Defendants have now moved for summary judgment on Rose's claims. (Dkt. Nos. 28, 54.) For the reasons that follow, Defendants' motion is granted and Rose's motion is denied.

I.     **Background**

The instant action is closely entwined with an earlier criminal case brought against Rose in this Court. *See United States v. Rose*, No. 15 Cr. 594 (S.D.N.Y.). The Court recounts the relevant details of that criminal proceeding before laying out the background of the instant suit. Unless otherwise noted, all facts are undisputed and are drawn from the records in Rose's criminal case or from the unanswered statement of undisputed facts Defendants filed pursuant to Local Rule 56.1 in connection with their summary judgment motion. *See Giannullo v. City of*

*New York*, 322 F.3d 139, 140 (2d Cir. 2003) (noting that where a party opposing summary judgment fails to controvert facts asserted in the movant's Rule 56.1 statement, those facts are "deemed admitted" if supported by the evidentiary record).

  A.  **The Criminal Proceedings**

  On August 14, 2015, a criminal complaint was filed in this Court against Rose and his co-defendant, James Arberry. (Dkt. No. 36 ("SOF") ¶ 10 & ¶ 11 n.3; Dkt. No. 29-6.) According to the complaint, Rose and Arberry committed a June 10, 2015 robbery in which they walked a victim to a bank under threat of violence, forced the victim to withdraw money, and stole the withdrawn funds. (Dkt. No. 29-6 ¶¶ 10–11.) An arrest warrant issued, and Rose was taken into custody on February 15, 2016. (SOF ¶¶ 9, 11; Dkt. Nos. 29-5, 29-7.) The day after Rose's arrest, he was brought before a magistrate judge and ordered held without bail. (SOF ¶ 12; Dkt. No. 29-7.) On that same day, Soloway was appointed as Rose's defense counsel. (SOF ¶ 13; Dkt. No. 29-7.)

  A month later, on March 15, 2016, a grand jury returned a three-count indictment against Rose. (SOF ¶ 14; Dkt. No. 29-8.) In addition to charging Rose under the federal bank-robbery statute, 18 U.S.C. § 2113, for the June 10, 2015 robbery, the indictment included a second bank-robbery charge for a similar July 10, 2015 incident and also charged Rose with conspiracy under the Hobbs Act, 18 U.S.C. § 1951, the generic federal robbery statute. (*Id.*) Thereafter, in an April 5, 2016 superseding indictment, the grand jury added a third bank-robbery charge for a January 8, 2015 incident that resembled the June and July 2015 incidents. (SOF ¶ 17; Dkt. No. 29-11.) As with the prior indictment, the superseding indictment included not only individual bank-robbery charges, but also a charge of conspiring to commit Hobbs Act robbery. (*Id.*)

  Following the return of the superseding indictment, Soloway spoke with Rose about the possibility of a plea agreement. (SOF ¶ 20; Dkt. No. 29-2 ("Soloway Decl.") ¶ 16.) According

2

to Soloway, "Rose was very clear . . . that he wanted [Soloway] to obtain for [Rose] the best deal [Soloway] could, and that [Rose] had no intention or desire to proceed to trial." (Soloway Decl. ¶ 17.) Consequently, Soloway spoke with Frank Balsamello, the Assistant United States Attorney prosecuting Rose's case, and negotiated a proposed deal whereby Rose would plead guilty to the Hobbs Act charge in exchange for the government's agreement to dismiss the three bank-robbery charges, each of which carried a ten-year mandatory minimum sentence. (SOF ¶ 25; Soloway Decl. ¶ 19.)

Balsamello sent Soloway a proposed plea deal on May 16, 2016. (SOF ¶ 26; Dkt. No. 29-15.) Under the proposal, the government would drop the bank-robbery charges if Rose pleaded guilty to the Hobbs Act conspiracy charge, which carried no mandatory minimum and which triggered a stipulated Sentencing Guidelines range of 100–125 months' imprisonment. (SOF ¶¶ 25–26; Dkt. No. 29-15 at 1, 4.) Soloway, though, responded that Rose's co-defendant, Arberry, had received a plea deal with a lower stipulated range of 77–96 months. (SOF ¶ 27; Soloway Decl. ¶ 20; *see also* Dkt. No. 29-16 at 4.) Balsamello explained that the discrepancy arose because Arberry had pleaded guilty to a single Hobbs Act robbery count, rather than a conspiracy count that took multiple robberies into account, but that Rose could not do the same because Rose's standalone robbery counts had been charged under the federal bank-robbery statute—with its mandatory minimum—and not under the Hobbs Act. (Soloway Decl. ¶ 20.) To resolve the issue, Balsamello filed a superseding information that charged Rose with a single count of Hobbs Act robbery. (SOF ¶¶ 28–29; Dkt. No. 29-18 at 8–10.) Balsamello also sent Soloway a revised plea deal proposal, pursuant to which Rose would plead guilty to the information's single count and the government would drop all other charges and stipulate to a sentencing range of 77–96 months. (SOF ¶ 29; Dkt. No. 29-18 at 2, 4.)

3

The parties offer differing accounts of what happened next. According to Soloway, he met with Rose to explain the revised plea deal proposal and to explain that Rose needed to waive indictment in order to receive the favorable sentencing range that the superseding information's Hobbs Act count made possible. (Soloway Decl. ¶ 21.) In Soloway's account, Rose decided to enter into the proposed deal and "expressed only satisfaction with the outcome to that point." (Soloway Decl. ¶¶ 23–24.) Rose, though, contends that Soloway "never took the time to explain" the deal and "just wanted [Rose] to sign, sign." (Dkt. No. 54 at 4.) In Rose's telling, Rose had complained that he was "being charged with a crime [he] did not commit," but Soloway overrode Rose's protestations and coerced him to accede to the deal. (Dkt. No. 54 at 5.) Whatever the case, it is undisputed that Rose came before the Court on June 24, 2016, waived indictment on the superseding information's single Hobbs Act count, and pleaded guilty to that count. (SOF ¶ 32; Dkt. No. 29-19.) The Court accepted the plea as having been knowingly and voluntarily made, and the case moved toward sentencing. (Dkt. No. 29-19 at 14.)

Soon after pleading guilty, though, Rose filed an August 4, 2016 letter with the Court, seeking to withdraw his plea and to have Soloway dismissed as defense counsel. (Dkt. No. 29-21 at 2.) According to Rose, he had professed his innocence to Soloway and asked Soloway to "challenge the indictment," but Soloway "did nothing." (*Id.*) Worse yet, Rose later attested, Soloway had "conned him into incriminating his own self" and "shouted and yelled" at Rose that Rose "could not win if he went to trial." (Dkt. No. 29-1 at 6.) Upon receiving Rose's letter, the Court granted Rose's request that substitute defense counsel be appointed to replace Soloway. (SOF ¶ 34.) As for Rose's motion to withdraw his guilty plea, Rose, through his new defense counsel, maintained that the Court could not rule without first "judging the credibility of either

4

Mr. Rose or [Soloway]" regarding their respective accounts of what had actually transpired between the two of them. (Dkt. No. 29-4.)

On January 13, 2017, the Court held the requested evidentiary hearing. (SOF ¶ 4.) At the hearing, Soloway testified—consistent with the testimony in an affidavit he had earlier submitted—that his interactions with Rose during the plea process had been "without any contention," that he had explained the plea deal to Rose, and that Rose had never shown any sign of hesitation or incomprehension about pleading guilty. (Dkt. No. 29-3 at 8, 20–23; *see also* Soloway Decl. ¶¶ 21–24.) Rose, for his part, declined to testify, opting instead to rest on his written submissions. (Dkt. No. 29-3 at 4, 44–45.)

At the conclusion of the hearing, the Court denied Rose's motion to withdraw his plea, holding that Rose had "not carried his burden of showing the claim underlying his request, that [Soloway] was ineffective, [was] a valid ground for relief." (Dkt. No. 29-3 at 51.) To the contrary, the Court found Soloway's testimony "entirely credible and believable" on "all relevant points." (Dkt. No. 29-3 at 52.) In particular, the Court found that Soloway "did explain the nature and contents of the evidence against [Rose] and that Mr. Soloway did not mislead Mr. Rose into believing that his only option was a plea deal but, rather, . . . appropriately and reasonably explained the nature of the evidence and expressed, in a professional and appropriate manner, his . . . reasonable view[] that the likelihood of prevailing at trial was low." (Dkt. No. 29-3 at 52–53.) Moreover, the Court found that "the communications and meetings between Mr. Soloway and Mr. Rose did not involve theatrics, [and] were not particularly contentious," and that Soloway "was not shouting and yelling" at Rose. (Dkt. No. 29-3 at 53.) In sum, the Court concluded, Soloway had not only performed competently, but indeed had done "everything that

5

would be expected of an effective and able criminal defense lawyer" under the circumstances. (Dkt. No. 29-3 at 55.)

With Rose thus bound by the plea he had entered earlier, his case was "back on track to the sentencing" (Dkt. No. 29-3 at 57), and the criminal matter proceeded accordingly.

### B. The Instant Suit

On August 16, 2016, while Rose's motion to withdraw his guilty plea was pending in this Court, Rose filed a civil complaint against Defendants in the U.S. District Court for the Northern District of Ohio. (Dkt. No. 1.) According to the complaint, Soloway "knowingly and willingly conspired with the Government prosecutors to get [Rose] to sign a waiver of indictment" and coerced Rose into pleading guilty to "a crime [he] did not commit." (Dkt. No. 1 at 2.) This conduct, the complaint alleged, constituted "legal malpractice and violation of [Rose's Sixth] Amendment rights." (*Id.*) As redress, Rose sought $24 million in damages. (Dkt. No. 1 at 3.)

The civil case was transferred to this Court on September 14, 2016 (Dkt. No. 5), and Defendants answered the complaint on March 9, 2017 (Dkt. No. 13). The parties proceeded to discovery, and on April 24, 2018, Defendants moved for summary judgment. (Dkt. No. 28.) Rose has filed no opposition to Defendants' motion, but he has filed a cross-motion arguing that he is entitled to summary judgment "for relief for false imprisonment."[1] (Dkt. No. 54 at 1.) Rose's motion also seeks to assert, for the first time, constitutional claims arising under the First, Fourth, Fifth, and Fourteenth Amendments. (*Id.*) The basis for these newly asserted claims,

---

[1] Rose also seeks "a preliminary injunction for relief for deliberate indifference." (Dkt. No. 54 at 1.) Given that Rose and Soloway's relationship has long since terminated, however, it is unclear what sort of action or forbearance on Soloway's part Rose seeks to enjoin. To the extent that Rose's motion for a preliminary injunction is distinct from his motion for summary judgment, the Court concludes that Rose has not established any entitlement to injunctive relief.

6

though, remains Soloway's alleged coercion in getting Rose to waive indictment (Dkt. No. 54 at 6) and in getting Rose to "plea out to a crime [he] did not commit" (Dkt. No. 54 at 9).

The Court now turns to the merits of the parties' motions.

## II. Legal Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On a summary judgment motion, the moving party bears "the initial burden of 'informing the district court of the basis for its motion' and identifying the matter that 'it believes demonstrates the absence of a genuine issue of material fact.'" *Universal TV Distribution Holdings LLC v. Walton*, No. 03 Civ. 9133, 2004 WL 2848528, at *2 (S.D.N.Y. Dec. 9, 2004) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If the movant successfully carries this burden, then it falls to the non-moving party to "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting Fed. R. Civ. P. 56(e)). Even if the non-moving party fails to oppose a summary-judgment motion, though, the Court may grant summary judgment only if the moving party "has met [its] burden of showing the absence of a genuine issue for trial" and an entitlement to judgment as a matter of law on the basis of the undisputed facts. *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004).

## III. Discussion

As described above, Rose and Soloway differ considerably in their accounts of what transpired over the course of their attorney-client relationship. In his motion for summary judgment, Rose simply repeats his own account without acknowledging that many of the underlying facts are disputed and without making any argument as to why he would be entitled to judgment as a matter of law even if all factual disputes were to be resolved in Soloway's favor. But if a jury were, for example, to credit Soloway's testimony that he fully explained the

proposed plea deal to Rose and that Rose never expressed "any desire to take his case to trial" and was "never interested in anything other than securing for himself the best plea deal the government would offer" (Soloway Decl. ¶¶ 3, 21–23), Rose would hardly be entitled as a matter of law to prevail on his claim that Soloway committed malpractice by tricking or coercing Rose into a guilty plea.[2] Rose's motion for summary judgment is therefore denied.

The Court next turns to Defendants' summary judgment motion. Although Defendants challenge the adequacy of Rose's evidentiary showing, claiming that the summary judgment record contains not even "a shred of evidence" supporting Rose's version of events (Dkt. No. 30 at 1), Defendants advance two arguments that, they argue, entitle them to summary judgment even if the present record could allow a reasonable juror to credit Rose's account. First, Defendants argue that Rose's claims in the instant suit are barred by the doctrine of collateral estoppel because they seek to relitigate matters that have already been decided against Rose in his criminal case. (Dkt. No. 30 at 12–17.) Second, Defendants argue that Rose cannot prevail on a legal malpractice claim under New York law because he has presented no evidence that he is actually innocent of the crimes to which he has pleaded guilty. (Dkt. No. 30 at 18.) Because the Court agrees with Defendants on the first point, it need not address the second.

---

[2] As for Rose's assorted constitutional claims, such claims are cognizable only where "the party charged with the deprivation [is] a person who may fairly be said to be a state actor," *Grogan v. Blooming Grove Volunteer Ambulance Corps*, 768 F.3d 259, 264 (2d Cir. 2014) (alteration in original) (quoting *Cranley v. Nat'l Life Ins. Co. of Vt.*, 318 F.3d 105, 111 (2d Cir. 2003)), and a defense attorney "does not qualify as a state actor when engaged in his general representation of a criminal defendant," *Georgia v. McCollum*, 505 U.S. 42, 53 (1992). To the extent that Rose contends that Soloway's alleged collusion with the prosecutor (*see* Dkt. No. 54 at 4) rendered Soloway a state actor subject to constitutional-tort liability, Soloway's account that he engaged in wholly appropriate conduct during the plea negotiations (*see* Soloway Decl. ¶¶ 19–20) at least creates factual disputes that are material to the question of whether Soloway has violated constitutional standards.

Collateral estoppel, generally speaking, provides that "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Allen v. McCurry*, 449 U.S. 90, 94 (1980). Under the federal common law that governs here, "collateral estoppel applies when '(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits.'" *Purdy v. Zeldes*, 337 F.3d 253, 258 (2d Cir. 2003) (quoting *Interoceanica Corp. v. Sound Pilots, Inc.*, 107 F.3d 86, 91 (2d Cir. 1997)).[3]

Rose's claims here are barred by collateral estoppel. To reiterate, the malpractice allegations that undergird all of Rose's claims here consist of Soloway's supposed "trick[ing] [Rose] into signing documents that [Rose] didn't understand," failing to "t[ake] the time to explain these documents," "coerc[ing] [Rose] into signing a waiver of indictment," and prompting Rose to plead guilty to "a crime [Rose] did not commit." (Dkt. No. 1 at 2.) But in denying Rose's motion to withdraw his guilty plea in his criminal case, this Court rejected these very allegations. In particular, the Court has found as fact that Soloway never "misle[d] Mr. Rose into believing that his only option was a plea deal," that Soloway "reasonably explained the nature of the evidence," that Soloway "reasonably recommended a disposition of the [criminal] case that was voluntarily accepted by Mr. Rose," and that Soloway "did everything that would be

---

[3] In arguing that collateral estoppel bars Rose's claims, Defendants principally rely on cases that apply New York law, rather than federal common law. (Dkt. No. 30 at 12–14.) The Court reminds Defendants that "federal law on collateral estoppel applies to determine the preclusive effect of a prior federal judgment." *Purdy*, 337 F.3d at 258 n.5. That said, the Court observes that "there appears to be no significant difference between New York preclusion law and federal preclusion law." *Pike v. Freeman*, 266 F.3d 78, 90 n.14 (2d Cir. 2001).

expected of an effective and able criminal defense lawyer in [his] situation." (Dkt. No. 29-3 at 52–55.)

The instant suit therefore involves factual issues identical to those that were "actually litigated and decided" in an earlier proceeding. *Purdy*, 337 F.3d at 258 (quoting *Interoceanica*, 107 F.3d at 91). Further, Rose offers no reason to doubt that he had a "full and fair opportunity to litigate" those issues during the criminal proceedings, *id.*, and the resolution of those issues formed a necessary basis for this Court's ultimate determination that Soloway had not been ineffective and that Rose had knowingly and voluntarily pleaded guilty (Dkt. No. 29-3 at 55–56). Because Rose's malpractice and constitutional claims are grounded in a factual narrative that this Court has already deemed conclusively to be false, then, they are barred by collateral estoppel. *See Moreno-Godoy v. Gallet Dreyer & Berkey, LLP*, No. 14 Civ. 7082, 2015 WL 5737565, at *18 (S.D.N.Y. Sept. 30, 2015) (rejecting malpractice claims as barred by collateral estoppel where "the issues on which [the plaintiff] claim[ed] malpractice were litigated and decided" in a habeas proceeding); *Purdy v. Zeldes*, 166 F. Supp. 2d 935, 943 (D. Vt. 2001) (applying collateral estoppel to malpractice claims "arising from the same factual allegations that were addressed by [a] habeas court"), *aff'd* 337 F.3d 253 (2d Cir. 2003); *see also Vavolizza v. Krieger*, 33 N.Y.2d 351, 355–56 (1974) (concluding under New York law that a malpractice action based on alleged coercion was barred by collateral estoppel where a habeas court had already found that no coercion had occurred).

Given that the undisputed facts about what issues were litigated and decided in Rose's earlier criminal case establish as a matter of law that Rose's claims in this civil action are barred by collateral estoppel, the Court concludes that Defendants are entitled to summary judgment.

## IV. Conclusion

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED and Rose's motion for summary judgment is DENIED.

The Clerk of Court is directed to close the motions at Docket Numbers 28 and 54 and to close this case.

SO ORDERED.

Dated: February 19, 2019
New York, New York

_____
J. PAUL OETKEN
United States District Judge

*COPY MAILED TO PRO SE PARTY BY CHAMBERS*